FILED

2023 Mar-14  PM 12:56
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **HILTON GERMANY,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 5:18-cv-1745-LCB** |
| | ) | |
| **OFFICER SLATER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION & ORDER

Over the past 17 years, this judicial officer has served as a municipal judge, a state district judge, a state appellate judge, and, now as a United States district judge. What follows is a description of the worst behavior this Court has ever observed of a pro se litigant, or for that matter, any litigant.

This case came to trial before a jury on February 27, 2023.  On the third day of the trial, March 1, 2023, the undersigned, in open court, dismissed the Plaintiff's case with prejudice as a sanction for his willful and contumacious behavior both before and during the trial.  Had an attorney engaged in even a fraction of the behavior described below, this case would have been dismissed long ago, and that attorney would no longer be practicing before this Court.  But given the fact that the Plaintiff was untrained in the law and representing himself, the Court tried earnestly to guide him to follow its orders and to behave in a civil and respectful manner so

that his case could be decided on its merits by a jury.  However, the Plaintiff made that impossible and showed absolutely no remorse for any of his actions.

## I.    Background

Hilton Germany, initially represented by counsel, sued four Huntsville Police officers for alleged civil rights violations stemming from his arrest on October 26, 2016.  The events of that evening were described in detail in the Court's order on summary judgment.  (Doc. 83, at 2-10).  The facts were largely undisputed given that the record contained video footage from eleven bodycams worn by the Defendants and other responding officers as well as audio recordings of two 9-1-1 calls that Germany placed.  (Docs. 60-14 through 60-27) (conventionally filed).  As noted in the order on summary judgment, those bodycam videos clearly show all but approximately 30 seconds of Germany's interactions with the police that night. (Doc. 83, at 35-36).

What remained of Germany's case following the summary-judgment stage was first set for trial on November 16, 2021.  However, on October 21, 2021, Germany's counsel filed a motion to withdraw from the case because, he said, Germany communicated to him both privately and publicly his belief that counsel was "working for" the Defendants and actively trying to sabotage his case.  (Doc. 108).  After a telephonic hearing on the matter, the Court found counsel's arguments to be credible, granted the motion, and generally continued the trial, giving Germany

30 days to secure new counsel.  (Doc. 109).  On December 13, 2021, Germany filed a pro se "Motion For Continuance."  (Doc. 110).  The Court granted the motion and gave Germany additional time to secure counsel, this time setting the deadline for January 15, 2022.  (Doc. 111).

The Court conducted a status conference on March 2, 2022, in order to lay out a plan for bringing the case to trial and to ascertain whether Germany had secured or planned to secure new counsel.  (Doc. 130).  In discussing his attempts to find an attorney, Germany stated that he "tried multiple times over the five years, and as you know, no one don't want to do attorneys."  *Id.* at 2.  Interpreting that statement to mean Germany intended to proceed pro se, the Court informed him of the many potential pitfalls of prosecuting his case without the assistance of counsel. Nevertheless, Germany stated that he had no intention of finding a lawyer. (Doc. 130 at 3–4).[1]

The Court next set the case for trial on July 18, 2022.  However, Germany filed a motion to continue that setting "to acquire an attorney . . . to pick out a jury." (Doc. 117).  The Court granted the motion and reset the trial.  (Doc. 119).  After additional telephonic conferences, the Court concluded that Germany would be proceeding pro se.  Because of his pro se status and the difficulties the parties were

---

[1] "[THE COURT]: So all that being said, do you want me to give you another opportunity to try to secure an attorney? MR. GERMANY: No, sir." (Doc. 130 at 4).

having in submitting a joint proposed pretrial order,[2] the Court ordered both parties to exchange drafts of their opening statements and to submit to the Court, *ex parte*, lists or outlines of the questions they proposed to ask at trial.  It was the Court's hope that this would streamline the trial and reduce the number of potential objections or other interruptions.  Neither party objected, and the Court subsequently entered an order to that effect.  *See* (Doc. 124 at 1) and (Doc. 176, at 17-18).[3]

On October 21, 2022, defense counsel filed a motion for sanctions alleging that Germany left a threatening message on his law firm's voicemail.[4]  (Doc. 131).  The motion sought appropriate relief up to and including dismissal of Germany's case.  Upon review of the voicemail, it appeared that Germany was upset about some of the assertions contained in the Defendants' proposed opening statement.  Specifically, Germany took issue with defense counsel's characterization of certain statements he made in the 9-1-1 call that was the genesis of this action.  In the voicemail, Germany stated:

> Yes, this message is for David Canupp [defense counsel].  I was calling to let you know that I've seen that you was doing defamation of character, and if that's going to be the case, I will go and start doing defamation of character against your staff and you as a company. Figure that this was supposed to be an actual factual statement, but I see that you're doing that you're doing defamation of character.  So if you do not remove this, I will be doing defamation of character as well

---

[2] Among other things, Germany would not agree with defense counsel's statement of undisputed facts.

[3] Germany did not submit his questions *ex parte* as ordered.

[4] The recording of that voicemail was conventionally filed with the Court.  (Doc. 132).

4

against you and your partner.  My name is Hilton Germany. My phone
number is (785) 492-0783.  You give me a phone call back whenever
it's convenient for you.  Thank you.

(Doc. 131, at 4-5).  As would later become apparent, Germany took issue with

defense counsel's inference from the 9-1-1 tapes that Germany intended to kill his

wife on the night in question.  The Court notes that, based on the undisputed facts

and the evidence ultimately presented at trial, such an inference was entirely

reasonable.

The Court conducted a hearing on the motion for sanctions on November 2,

2022.  At the hearing, defense counsel argued, among other things, that Germany's

voicemail was meant to intimidate and to have a chilling effect on counsel's ability

to defend his clients.  After Germany was afforded an opportunity to explain himself,

the Court stated as follows:

Now, Mr. Germany, I'm going to say this: I want you to
understand, if you were an attorney and you left this message on
Mr. Canupp's answering machine, then I -- honestly, I would be
blistering you right now.  I would probably fine you, hold you in
contempt, and issue sanctions, because [] your message that you
left over there was not appropriate.

(Doc. 176 at 8).  However, recognizing that Germany was pro se, the Court gave

him the benefit of the doubt and held its ruling on the motion for sanctions in

abeyance.  The Court nevertheless cautioned Germany that, notwithstanding his pro

se status, the Court could not give him special privileges or allow him to "behave in

a way that [it] would not let another attorney behave."  *Id.*  Also, the Court warned

Germany that it would revisit and potentially grant the motion for sanctions if similar issues arose again.

Germany, apparently unhappy with the Court's warning, began to make faces, shake his head, and laugh in a disrespectful manner. The following exchange then occurred:

> [THE COURT]: Mr. Germany, I don't know what kind of faces you're making, but it appears to be disrespectful. If it's not, then, you know...
>
> MR. GERMANY: Because I'm squinting? That's the disrespectful? I didn't even say nothing, Your Honor.
>
> THE COURT: You seem to be giggling, and whatnot. I just ask you to hold a straight face while I'm talking today.

*Id.* at 9. Despite Germany's behavior, the Court continued with the hearing and discussed, among other things, the logistics of the trial. Prior to adjourning, the Court again encouraged all parties to maintain a "very high standard of civility and decorum." *Id*. at 37.

The Court scheduled the trial to begin on February 27, 2023, and conducted a pretrial conference on February 15, 2023. With the consent of all parties, the Court heard argument on the Defendants' motions in limine. Several of those motions sought to preclude Germany from mentioning or referencing matters that were not relevant to the remaining claims. For example, the Court's order on summary judgment found that Germany's arrest was proper and dismissed his claims relating

to that aspect of the case, e.g., his claims for false arrest.  In arguing against that motion in limine, Germany expressed confusion about why he would not be able to present evidence regarding the disposition of the criminal charges stemming from that arrest.  The Court again attempted to explain its summary judgment ruling to Germany so that he could understand what he needed to prove at trial in order to succeed on his remaining claims.  Germany then replied as follows:

> Your Honor, I greatly appreciate it.  And as I stated, I'm just telling the truth.  So if you don't want me to tell the truth, I apologize.  I can just lie all through the court.  But that's the truth. So I am not going to change my truth because you feel like you don't want to get the police officers in trouble.  I cannot help that. And I do apologize.

(Doc. 177 at 16).  Based on that statement, the Court warned Germany as follows:

> You are going to not mention anything I tell you not to mention in this trial.  And I am going to tell you, the minute you do something you know you're not supposed to do, I'm going to sanction you…. And sanctions could result in the dismissal of your case.

*Id*.  The Court then heard argument on the remaining motions and set a final pretrial conference for February 24, 2023.  (Doc. 168).

One of the purposes of the final pretrial conference was to allow the Defendants time to review certain exhibits Germany referenced in his exhibit list, which at the time had never been produced.  The Court ordered Germany to produce

those documents to defense counsel before the next hearing.[5]  (Doc. 177, at 74-75).
Additionally, the Court planned to finalize the method by which Germany would
present his own testimony at the trial.

Near the end of the February 15, 2023 pretrial conference, defense counsel
also noted that Germany still had not produced a damages statement as required by
the Court's pretrial order.[6]  As will be discussed in more detail below, Germany's
intentional failure to produce a damages statement would continue throughout the
remainder of the proceedings and cause serious prejudice to the Defendants.

The Court convened for the February 24th hearing, but Germany did not
appear.  A review of the record reveals that Germany was made aware of the hearing
several times.  At the beginning of the February 15th hearing, the Court stated:
"Before we get started, let me say I want us to reconvene at 1:30 on the Friday before
trial just to cover any other outstanding issues that we have."  (Doc. 177 at 3).  The
Court then referred to the hearing "next Friday" on at least six occasions during that
hearing.  *Id.* at 9, 27, 31, 39, 62, and 75.  At the conclusion of the hearing, when
asked if he wanted to cover any additional issues that day "as opposed to Friday,"

---

[5] Again, the Court gave Germany considerable leeway because of his pro se status.  Germany
attempted to blame his failure to disclose these exhibits on his prior attorney and alleged that the
attorney had not given him certain pieces of evidence.  Even though that attorney had been
withdrawn from the case for over a year at that point, this was the first time Germany ever
mentioned any such difficulties.

[6] (Doc. 135, at 9) ("At least fourteen (14) days before trial, the parties shall file and serve a list
itemizing all damages and equitable relief being claimed or sought, including the amount
requested, and, where applicable, the method and basis of computation.").

Germany clarified, "You are saying next Friday, correct?" *Id.* at 81. The Court replied, "Next Friday. Yes. Absolutely." *Id.* The Court then entered an order on the docket setting the hearing. (Doc. 168) ("[A] pretrial conference is set for February 24, 2023 at 1:30 p.m. in the Federal Courthouse, Huntsville, AL before the undersigned."). The Court's CM/ECF system reflects that Germany was served with notice of this order at the email address he provided to the Court.

Based on Germany's failure to appear, the Defendants moved on the record to renew their motion for sanctions and to include as an additional ground Germany's absence at the hearing. The Defendants also filed a written motion to that effect on February 26, 2023. (Doc. 181). In that motion, the Defendants outlined the prejudice they incurred as a result of Germany's failure to appear. For example, the issues that were to be addressed at the final pretrial hearing would now have to be, and indeed were, taken up before trial on Monday. This unnecessarily wasted the time of all parties involved, including the Defendants, who had to use personal leave from their jobs in order to be present. Nevertheless, the Court—in neither its first nor its last attempt to lend Germany every possible opportunity to follow the rules—decided to again hold ruling on that motion in abeyance.

Both Germany's threatening voicemail, his failure to timely produce a damages statement, and his failure to appear at the pretrial conference could independently have supported sanctions. But given Germany's status as a pro se

9

litigant, the Court was lenient.  Indeed, this Court takes very seriously a plaintiff's right to have his case decided by a jury as opposed to having it dismissed as a sanction.  Therefore, the Court let the trial proceed.

## II.    The Trial

In the following paragraphs, the Court will do its best to describe Germany's behavior during the trial.  Though his words and actions certainly speak for themselves, it should be noted that Germany's general tone, demeanor, and body language cannot be seen on paper.  Germany's behavior was hostile, insolent, and extremely disrespectful on numerous occasions throughout the proceedings— specifically, those occasions when he did not get what he wanted.  As will become apparent, Germany disagreed with many of the Court's rulings.  However, as opposed to continuing with the trial and appealing those rulings in the event of an unfavorable verdict, Germany took it upon himself to freely violate the Court's orders as he saw fit.

### A. Germany repeatedly violated the Court's orders on Defendants' motions in limine.

It is helpful to note here that the issues to be decided at trial were narrow.  As thoroughly explained in the Court's order on summary judgment and orally on multiple occasions throughout the proceedings,[7] the officers properly arrested

---

[7] *E.g.*  (Doc. 177, at 56) ("The only thing that's relevant is whether or not … [the Defendants] overstepped their bounds when you were handcuffed or right before.  That's what we're here on….

Germany and used lawful force to gain his compliance before and after he was handcuffed.  This was readily apparent from the bodycam videos.  However, because of the physical altercation that ensued when Germany refused to submit to arrest, the videos contain approximately 30 seconds of footage that was unclear.  It was during those 30 seconds, Germany claimed, that the Defendants punched and choked him after he was subdued or handcuffed.  What happened—or did not happen—during those 30 seconds was the sole question the jury was empaneled to decide.

Nevertheless, Germany repeatedly presented and elicited comments and testimony related to claims that were dismissed at summary judgment.  As one example, Germany alleged in his second amended complaint that the Defendants "dragged him out of the house" and "dropped him onto the porch."  (Doc. 28 at 4).  Later in the complaint, he claimed the Defendants used force that included, "slamming him on the concrete porch."  *Id.* at 9.  In the Court's order on summary judgment, it was noted that the bodycam videos clearly refuted this contention.  (Doc. 83, at 9) ("Germany was then escorted out of the house but walked under his own power…. Neither Germany nor any of the officers fell to the ground, and the videos clearly show that the officers did not throw Germany to the ground.").

My order [on summary judgment] has already found that there's no claim existing in the time after or before that, only during that time the body cam is not clear.")

11

Accordingly, the Court dismissed all of Germany's claims related to that false contention.

In its order on the Defendants' motion in limine, the Court excluded any reference to claims that had been dismissed, including the claims stemming from Germany's allegation that he was dropped or slammed onto his porch. (Doc. 173, at 9). Nevertheless, Germany violated the order multiple times. First, during his opening statement, Germany said, "you will see in the footage that [Germany] was dropped off his porch." (Tr., at 99).[8] While being cross examined, Germany was asked, "what did each of these officers do to you in terms of a strike?" Germany replied, "I was punched, choked, pepper sprayed … and then dropped off of my porch." (Tr., at 375). Finally, Germany was specifically asked whether there was anything else in the bodycam video "that shows officers punching [him] while [he was] on the ground." (Tr., at 434-35). Germany replied, "Well, I think it's something later in the video that will show that Mr. Germany's getting dropped off his porch with officers walking him out." *Id.* at 435. At that point, the Court granted defense counsel's motion to strike and later issued a limiting instruction to the jury.

While that alone warranted sanctions, Germany continued to flout the Court's orders. Another blatant example involved the Court's ruling that Germany would not be permitted to discuss the disposition of his criminal charges in front of the jury

---

[8] "Tr." Denotes the transcript of the jury trial held from February 27, 2023, to March 1, 2023.

as doing so would not be relevant to his excessive-force claim.[9]  While the Court allowed testimony about the fact that Germany was arrested and charged with disturbing the peace and resisting arrest, the Court specifically ruled that there would be no mention of the disposition of those charges.[10]

Germany vehemently disagreed with that ruling and, in defiance of the Court's order, mentioned the outcome of his criminal case on several occasions in front of the jury.  On one occasion, in response to the question, "What else do you want the jury to know about this incident, sir?" Germany replied, "Well, I wasn't guilty."[11]  (Tr., at 345).  The Court granted the Defendants' motion to strike that answer and issued a curative instruction to the jury.  *Id.*  The Court reminded Germany of the pretrial ruling and warned him that further mention of such issues could result in sanctions including dismissal of his case.  *Id.* at 346.  Despite that clear warning, Germany violated the order again a few minutes later:

---

[9] The Court initially decided that it would include a brief mention of the disposition of Germany's criminal charges in the narrative statement of the case it planned to read to the jury before opening statements.  However, the Court reconsidered that ruling prior to trial and instructed the parties that there was to be no mention of the disposition of the charges.  (Tr., at 69-70).  The Court notes that even before its reconsideration of the issue, Germany would have been prohibited from eliciting testimony about or otherwise discussing that issue.

[10] As explained in the order on the Defendants' motions in limine and multiple times during the trial, the Court allowed testimony about the arrest and the charges as part of the *res gestae*.  Further, the bodycam videos, which were admitted in their entirety by agreement of the parties, clearly showed that Germany was arrested.  The bodycam videos also contained statements from the officers reflecting what Germany was being charged with.  Thus, it was unavoidable that the jury would learn that information.

[11] It should be noted that Germany was not acquitted of his criminal charges.  Rather, the prosecutor moved to dismiss the charges after Germany moved out of state.

> [Defense Counsel]: Did you tell the doctor, who you told you were, quote, assaulted, that it was your own fault?
>
> [Germany]: No.  It's not my own fault, because as you know, I wasn't even guilty.

(Tr., at 441).   The Court struck his answer and again gave the jury a curative instruction.

Germany's criminal charges continued to be a contentious issue despite the Court's rulings and clear instructions to their exclusion.  Before a lunch recess on the third day of trial, outside the presence of the jury, the Court and the parties discussed Germany's repeated violations of those orders.  The following exchange occurred:

> MR. CANUPP: We have a very serious issue. Mr. Germany has again violated this Court's order. He just referred to the criminal judge in the course of questioning this witness. We have specifically and repeatedly obtained orders of this Court to prohibit him from referencing his criminal proceeding or the dismissal of those charges. He is getting perilously close to mentioning dismissal. He specifically injected the criminal issue into this courtroom twice now I think today, most recently that.
>
> This -- I mean, this is just beyond the pale to me. I recognize I keep raising this, but this defiance of court orders is extremely serious. It is making it just about impossible for our guys to get a fair trial at this point.
>
> THE COURT: I understand.
>
> MR. GERMANY: I object.
>
> THE COURT: Mr. Germany?

MR. GERMANY: Yes. I object. First of all, Mr. Germany is not getting a fair trial because none of my evidence was submitted in. Also, I understand what he's saying, but if he's able to use something that is fiction that I'm not even charged with or wasn't even guilty of, of the accusations, then I'm not going to say that I was guilty. I'm not going to say that I wasn't -- I committed something that I did not and that the criminal judge decided to dismiss the case and I went to court and it stated I was not guilty. So I am not going to go with your narrative. So you going to have to do what you got to do.

THE COURT: Sir, I have issued an order that says that we are not going to refer to the disposition of the criminal charges.

MR. GERMANY: But they using it, Your Honor. They using my criminal charges, but you don't want me to use mine.  That's crazy.

THE COURT: Well, that's the ruling. And, sir, if you are going to continue to do this, you know where it's going to get us. Mr. Canupp, I have heard you and I am not saying I am not going to grant your motion at some point. I am going to let this roll on. I know you are crafting some instructions.

MR. CANUPP: Just for the record, I feel it's important to mention that we have not used Mr. Germany's criminal charge in this case whatsoever.

MR. GERMANY: The criminal – objection. The criminal charge is disturbing the peace and resisting arrest, which I was not found guilty of. So if they can use that, I'm definitely going to tell them not guilty.

THE COURT: Oh, so you are going to continue to do that? You are going to continue to defy this order? You're going to continue to refer to the criminal charges? Is that what you are going to tell me?

MR. GERMANY: I am going to respond just as the defendant is responding, Your Honor. So whatever the defendant is responding to, I am going to respond in that kind of manner, as well.

(Tr., at 459-61).  Though Germany next stated that he was trying to follow the orders, the Court had little to no confidence that he intended to do so.  *Id*. at 61.

The Court's suspicions were confirmed when, after the lunch recess, Germany continued to argue with the Court about the issue and refused to accept the ruling. During the recess, the Defendants prepared a cautionary instruction to be read to the jury addressing the many instances of inappropriate testimony detailed above. Germany reviewed the proposed instruction and objected.  The following exchange then occurred:

> [THE COURT]: All right. What's your objection, sir?
>
> MR. GERMANY: The defendant is stating that everything was lawful, and that's not the case. Also, how is -- he's talking about an excessive force. He's putting that in there. He's talking about the four strikes and pepper are legal. And he's not -- how can he make that's legal? How can any other strikes be legal or lawfully if Mr. Germany case was dismissed?
>
> THE COURT: So, sir, obviously, whether your case was dismissed or not is not relevant to the issue of whether the arrest was unlawful, or whether the police officers had probable cause to arrest you. And, again, I have already ruled on these issues. You have disregarded my rulings on motion in limine, and improperly brought these issues to the jury. And so it's now my duty so that we have a fair trial –
>
> MR. GERMANY: Uh-huh.
>
> THE COURT: -- to correct the record, and I intend to do that.
>
> MR. GERMANY: Okay, Your Honor. And, once again, how can you make a judgment in criminal court when it was already made?

THE COURT: Sir, you just fundamentally don't understand what the law is, and that's just where it sits. And there's nothing I can do to try to reason with you because you don't have any legal training. I am going to read this instruction to the jury, and that's where it is.

MR. GERMANY: Okay. That's fine.

(Tr., at 462-63).  But it was not fine.  After a brief discussion about appending the proposed cautionary instruction to the transcript, Germany again interjected:

MR. GERMANY: Once again, I object, due to the fact he continue to put these things in, saying that this is legal and Mr. Germany was not guilty. You tell me where it state Mr. Germany not guilty at, because I provided evidence, and you saying I can't use it. They received the evidence, but you saying –

THE COURT: Sir, it doesn't matter whether you were –

MR. GERMANY: It does.

THE COURT: -- found guilty or not in this case. And I'm finished arguing that with you. I have told you my reasoning.

MR. GERMANY: You didn't tell me your reasoning, Your Honor. You didn't tell me the law, what it was the law that you stated was lawful for them to enter in.

THE COURT: Sir, if you had read my summary judgment order, you would understand this maybe.  All right. Let's bring the jury in.

*Id.* at 463-64.

Once the jury returned, the Court issued the cautionary instruction noted above.  As the Court read the instruction to the jury, Germany began to laugh, make faces, gesture, and shake his head in disbelief at the jury as he had done at other points in the trial and in pretrial hearings.  However, the Court notes that he appeared

17

quite agitated at this point, and his gestures were more pronounced.  Again, the Court

reprimanded Germany:

> [THE COURT]: Sir, it's absolutely disrespectful for you to make faces
> when you disagree with my ruling.
>
> MR. GERMANY: Did you see that?
>
> THE COURT: I certainly did.
>
> MR. GERMANY: So I can't smile?
>
> THE COURT: You are being disrespectful, and I want the record to so
> show that. There's no sense in this. I expect you to conduct yourself
> with the same civility that any other person would in this courtroom.
>
> MR. GERMANY: With a smile. I'm doing a smile. This what I am
> doing (indicating).
>
> THE COURT: I'm talking. You're not talking. Mr. Germany?
>
> MR. GERMANY: Yes.
>
> THE COURT: Again, do not address the jury like that.
>
> MR. GERMANY: I didn't address the jury.
>
> THE COURT: Do not use those hand moves. It is disrespectful. Mr.
> Canupp would be in the jail right now if you –
>
> MR. GERMANY: Your Honor, I didn't use –
>
> THE COURT: I'm talking. You're not talking. At some point, I'm not
> going to put up with this. I expect you to behave civilly the way
> everybody else in this courtroom does. Let's proceed.

*Id*. at 468-69.  At that point, the Court attempted to let the trial proceed, but

Germany remained argumentative and petulant.  After a contentious exchange

about whether Germany had any more questions for a witness, the Court warned him to tread lightly, to which Germany replied, "Your Honor, can you stop threatening me?"  *Id*. at 471.  The Court then sent the jury out of the courtroom, and the following exchange occurred:

> THE COURT: Sir, when I tell you to follow my orders and the law, that's not a threat. All right, Mr. Germany, here we are.
>
> MR. GERMANY: Okay.
>
> THE COURT: If you are going to keep this up, just go ahead and tell me now. If you are going to continue to not follow my orders, be disrespectful in front of this jury to the attorneys, the parties, and this Court, if you intend to continue to do that, I need to know right now.
>
> MR. GERMANY: Your Honor, I'm going to represent –
>
> THE COURT: My question to you: Do you intend to follow my orders or not?
>
> MR. GERMANY: I don't know. Why you yelling at me?
>
> THE COURT: You don't know if you are going to follow my orders or be –
>
> MR. GERMANY: Please stop yelling at me. I'm not your child, Your Honor.
>
> THE COURT: Answer my question.
>
> MR. GERMANY: What do you want me to answer?
>
> THE COURT: Are you going to follow my orders and be civil and conduct yourself in a good manner if this trial continues?
>
> MR. GERMANY: I am being civil. You think –

THE COURT: Answer my question.

MR. GERMANY: I am being civilized.

THE COURT: Answer my question. Are you going to or not?

MR. GERMANY: I am being civilized.

THE COURT: My question: Are you going to?

MR. GERMANY: I am being civilized, Your Honor.

THE COURT: Okay. Take him to the back. You are in contempt.[12]

MR. GERMANY: Okay. No problem.

THE COURT: Let's take a recess.

*Id.* at 471-72.

Again, the Court notes that Germany's words alone justified sanctions. However, the Court wishes to make clear that during this entire exchange—indeed, during nearly every exchange that did not go Germany's way—he adopted a tone and posture of utter disrespect, contempt, and hostility.  At this point in the trial, it became clear that Germany's intentional behavior had completely deprived the Defendants of a fair trial and that Germany had no intention of modifying his behavior going forward.  Continuing the proceedings would have been farcical and fruitless.  Germany was openly mocking the Court and its rulings in front of the jury and clearly signaling his intent to violate the Court's orders.

---

[12] Germany was removed from the courtroom for approximately two minutes.

After returning from a brief recess, the Court sanctioned Germany by dismissing his case with prejudice for all the reasons detailed in this order and on the record:

> All right, Mr. Germany.  For all of the reasons that we've covered in Mr. Canupp's motion for sanctions, your complete disregard for decorum in this Court, your complete disregard for my [orders on] motions in limine, your failure to comply with my pretrial order, and provide them even a statement of damages even to now, and then your absolute insulting behavior in front of this jury, in front of these parties, in front of this Court, and your -- and, let me say, and your own unwillingness to commit to stop doing that, I find your behavior is willful. I find that there is no lesser sanction than the dismissal of your case.  This case is dismissed with prejudice.

(Tr., at 472-73).[13]  The Court finds that all of Germany's above-mentioned behavior was willful and contumacious.[14]

### B. Germany failed to timely produce to the Defendants a statement of damages as required by the Court's pretrial order.

In addition to repeatedly violating the Court's orders on the Defendants' motions in limine, Germany failed throughout the proceedings to submit to the Defendants a statement of his alleged damages.  As noted above, Germany was ordered to provide the damages statement to the Defendants at least 14 days prior to

---

[13] Though not appearing in the record, some of the jurors asked the Marshals to accompany them to their vehicles.

[14] In addition to the examples discussed above, there were other instances where Germany blatantly violated the Court's orders on a motion in limine.  For example, the Court specifically excluded any reference from lay witnesses about future medical treatment that Germany allegedly required. *See* (Doc. 173, at 2-3).  Despite that prohibition, Germany began to testify about a surgery that he claims to have scheduled.  (Tr., at 344).  The Court sustained the Defendants' objection and instructed the jury to disregard the testimony.  *Id.* at 344-45.

trial. (Doc. 135, at 9). He failed to do so. Consistent with defense counsel's explanation on the record, the lack of a damages statement prejudiced the Defendants by preventing them from crafting questions for both potential jurors and for witnesses regarding the types of damages Germany intended to ask for. Further, it precluded the defense from filing pretrial motions regarding damages, from addressing damages in their opening statement, and, had the trial gone forward, from addressing the issue of damages during closing arguments.

On the first day of trial, the Court asked Germany why he had not yet provided to the defense a damages statement. Germany replied, "Because I didn't know I needed to provide a statement of damages." (Tr., at 49). Again, that requirement was clearly spelled out in the pretrial order. Nevertheless, the Court decided to give Germany the benefit of the doubt and ordered him to write out a statement of damages and give it to defense counsel immediately.[15] *Id.* at 50. Germany failed to do so.

On the second day of trial, the issue of a damages statement arose again. When the Court asked Germany why he failed to provide a damages statement as ordered, he replied, "I tried to show [defense counsel]. They left. Everybody left

---

[15] The Court would note that this exchange was another instance in which Germany displayed a disrespectful attitude by shaking his head in disagreement in such a manner as to cause the Court to reprimand him by saying, "Sir, don't shake your head or take any kind of attitude with me, now." (Tr., at 50). As opposed to moving on and simply writing out the required damages statement, Germany stated in an argumentative tone, "How am I having an attitude, Your Honor?" *Id.*

yesterday." (Tr., at 349).  The Court would note that it ordered Germany to produce the damages statement early in the proceedings on the first day of trial.  The parties proceeded through opening statements and Germany began the direct examination of his first witness.  Said another way, several hours passed between the Court's directive and the end of the first day's proceedings.  Thus, any suggestion that defense counsel left the courthouse before Germany had time to give them a damages statement is meritless.  He had several hours.

By the third day of trial, defense counsel still complained that they had not received a damages statement.  The Court *again* asked Germany why he had not provided it, and Germany stated that a copy had just been emailed to the Clerk's office.  However, the attachment to Germany's email did not contain a damages statement.  Instead, it appeared to be a rough draft of his closing argument.  Germany claimed that there must have been technical difficulties and stated that he would have his mother attempt to find the correct document and send it to defense counsel.

In yet another attempt to be lenient with Germany, the Court suggested that the defense take him on voir dire, outside the presence of the jury, regarding his alleged damages.  Though the Defendants made clear that such a solution did not cure any of the prejudice they complained of, defense counsel followed the Court's instruction and questioned Germany about his alleged damages.  However, Germany could not answer basic questions about his alleged damages.  Germany began by

stating that he was seeking $1,500,000.  When asked if he did any calculations to arrive at that number, he stated, "Oh, yeah."  (Tr. at 398).  However, when asked to elaborate, Germany told defense counsel that his mother was the one who did the calculations, and that defense counsel would have to ask her about any formulas or interest rates used to arrive at that number.  Further, Germany stated that he had no estimate of how much money he paid in medical bills related to the incident and had no documentation with him that would reflect that.  He similarly had no information or documentation about alleged property damage.  Finally, when asked about punitive damages, Germany admitted that he did not know the definition of punitive damages.[16]

Again, the Defendants renewed their motion for sanctions on this issue, citing the obvious prejudice in not knowing, for example, the amount of money Germany was seeking, how that amount was calculated, or whether Germany intended to ask for punitive damages.  Out of an abundance of caution as well as the Court's desire to have this case resolved by a jury, the trial was again allowed to continue.  However, given the behavior just described, the Court does not believe any of Germany's explanations for his failure to produce the damages statement.  The Court

---

[16] After Germany mentioned punitive damages in his testimony, defense counsel pressed further and asked what he was talking about.  Germany replied, "I don't even know.  What's the definition of punitive?"  (Tr. at 404).

finds that the failure constituted no less than a willful attempt to hamper the Defendants' right to a fair trial.

## III.   Legal Standards

There are at least three bases for the Court's decision to dismiss Germany's case with prejudice as a sanction for his behavior before and during trial.  First, Germany failed to appear at a pretrial conference.  Federal Rule of Civil Procedure 16(a) provides that a court "may order the attorneys and any unrepresented parties to appear for one or more pretrial conferences" for various purposes including "(1) expediting disposition of the action; (2) establishing early and continuing control so that the case will not be protracted because of lack of management; (3) discouraging wasteful pretrial activities; [and] (4) improving the quality of the trial through more thorough preparation…."  The Court had these purposes in mind when scheduling each of the pretrial conferences, including the one on February 24, 2023, which Germany failed to attend.  Federal Rule of Civil Procedure 16(f) provides:

> On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii)[17], if a party or its attorney:
>
>> (A)   fails to appear at a scheduling or other pretrial conference;
>>
>> (B)   is substantially unprepared to participate--or does not participate in good faith--in the conference; or

---

[17] Federal Rule of Civil Procedure 37(b)(2)(A)(v) authorizes dismissal of the action in whole or in part as a sanction.

(C)     fails to obey a scheduling or other pretrial order.

As noted, Germany failed to appear despite adequate notice and failed to submit to the Defendants a damages statement as ordered.  The Defendants moved for the sanction of dismissal on the record and followed that with a written motion filed on February 26, 2023.  (Doc. 181).  Recognizing that Germany was pro se, the Court held ruling on that motion in abeyance.  However, as reflected in transcript, Germany's failure to appear at that hearing caused unnecessary delay and confusion. For example, the Court had intended to use the final pretrial conference to clarify the method by which Germany would give his own testimony, i.e., whether he would be permitted to give a narrative or whether someone would read his questions to him. *See* (Tr, at 322) (Germany arguing about whether the Court had previously stated that he would be allowed to "freestyle" his testimony).  This is but one example of the delay and confusion caused by Germany's absence.  The Court finds Germany's absence to be willful and his explanations for his absence to lack credibility.  Thus, dismissal was appropriate as a sanction pursuant to Federal Rule of Civil Procedure 16(f), namely for Germany's failure to appear at the pretrial hearing and for his failure to provide a damages statement as ordered.

Second, Federal Rule of Civil Procedure 41(b) provides: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move

to dismiss the action or any claim against it." The Defendants made such a motion. (Doc. 181). As detailed above, Germany violated the Court's orders on numerous occasions by, among other things, continually referring to matters that were specifically excluded by the Court's order on the Defendants' motions in limine, i.e., testifying about being dropped off his porch and the disposition of his criminal charges. The Defendants in this case, just like Germany, were entitled to a fair trial, and the Court considered that when making the pretrial rulings. By repeatedly flouting these rulings, Germany sought to deprive the Defendants of their day in court. The Court finds that the instances detailed above were willful and done with the intent to relitigate matters already decided adversely to Germany and to put inadmissible evidence in front of the jury.

In *Zocaras v. Castro*, 465 F.3d 479 (11th Cir. 2006), the United States Court of Appeals for the Eleventh Circuit held:

> Rule 41(b) makes clear that a trial court has discretion to impose sanctions on a party who fails to adhere to court rules. Fed. R. Civ. P. 41(b). But that discretion is not unlimited, and the "[d]ismissal of a case with prejudice is considered a sanction of last resort, applicable only in extreme circumstances." *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir.1985). Dismissal with prejudice is not proper unless "the district court finds a clear record of delay or willful conduct and that lesser sanctions are inadequate to correct such conduct." *Betty K Agencies, Ltd.*, 432 F.3d at 1339. Mere negligence or confusion is not sufficient to justify a finding of delay or willful misconduct. *McKelvey v. AT & T Techs., Inc.*, 789 F.2d 1518, 1520 (11th Cir.1986). In addition to its power under Rule 41(b), a court also has the inherent ability to dismiss a claim in light of its authority to enforce its orders and provide for the

> efficient disposition of litigation. *See Link v. Wabash R.R.*, 370 U.S.
> 626, 630–31, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962).

*Id.* at 483. In the present case, the Court finds that Germany's conduct was willful.

That is evident by the sheer number of times Germany disobeyed the Court's orders

and his responses when questioned about his behavior.  As noted above, Germany

essentially told the Court that he intended to continue mentioning the disposition of

his criminal charges despite direct orders that he not do so.  Given his attitude toward

this issue and the egregious nature of all the other things described above, the Court

finds that no lesser sanction than dismissal of his case would be adequate.  Germany

simply had no intention of modifying his conduct to comply with the Court's orders.

Therefore, the Court finds that dismissal of this action pursuant to Rule 41(b) is the

only appropriate remedy for Germany's disregard of the Court's orders.

Finally, the Court turns to Germany's conduct and general attitude during the

trial.  As detailed above, Germany continually and repeatedly engaged in hostile,

argumentative, and insolent behavior toward the Court and opposing counsel.  The

Court finds that this behavior was willful and designed to be provocative.  Though

the Court warned Germany of the consequences of his behavior on numerous

occasions, he refused to conform his behavior to anything that could be considered

appropriate in a United States District Court.  The United States Supreme Court has

held:

> It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *United States v. Hudson*, 7 Cranch 32, 34, 3 L.Ed. 259 (1812); *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (citing *Hudson*). For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Anderson v. Dunn*, 6 Wheat. 204, 227, 5 L.Ed. 242 (1821); *see also Ex parte Robinson*, 19 Wall. 505, 510, 22 L.Ed. 205 (1874). These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co*., 370 U.S. 626, 630–631, 82 S.Ct. 1386, 1388–1389, 8 L.Ed.2d 734 (1962).

*Chambers v. NASCO, Inc*., 501 U.S. 32, 43 (1991).  "The inherent power of a court to manage its affairs necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it." *Flaksa v. Little River Constr. Co*., 389 F.2d 885, 888 (5th Cir. 1968).  The Court finds that no alternative or lesser sanction would have corrected Germany's behavior.  Despite warning after warning, his grossly inappropriate behavior continued.  Thus, pursuant to its inherent authority as described by the Supreme Court, this Court finds that Germany's case is due to be dismissed as a sanction for not only his attitude and behavior, but for the combination of every other reason discussed above.

## IV. Conclusion

In the preceding paragraphs, the undersigned has taken great pains to describe the egregious behavior Germany exhibited throughout this litigation.  But that

description should in no way be construed as exhaustive in nature.  A review of the entire record reveals that Germany engaged in a pattern of willful behavior both before and during trial that made it impossible for the Court to continue the proceedings with any semblance of order.  Further, Germany's intentional actions so poisoned this proceeding so as to deprive the Defendants of anything approaching a fair trial.  Based on the foregoing, the record as a whole, and the reasons stated by the Court at the conclusion of the proceedings, justice demands that this case be hereby **DISMISSED WITH PREJUDICE** pursuant to Federal Rules of Civil Procedure 16(f), 41(b), and the Court's inherent authority to manage its own affairs so as to achieve the orderly and expeditious disposition of cases.

In dismissing this case, the Court is **GRANTING** the Defendants' Renewed Motion for Sanctions (Doc. 181) not only on the grounds cited by the Defendants, but also for the other reasons referenced in this opinion.

A separate, final judgment will be entered.

**DONE** and **ORDERED** March 14, 2023.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE

30